Reddy v. Graham.

No. 22,493.

MIMA REDDY, as Administratrix of the Estate of JANE GRA-
HAM, Deceased, *Appellant*, v. R. H. GRAHAM, Jr., and ANNA
GRAHAM, *Appellees*.

### SYLLABUS BY THE COURT.

1. CANCELLATION OF DEED—*Evidence—Demurrer Wrongfully Sustained*.
   The evidence to maintain an action to cancel a deed and to quiet the
   title to property conveyed by a mother to her son, examined, and held
   sufficient as against a demurrer thereto.

2. SAME—The familiar rule applied that when a demurrer to evidence is
   interposed the trial court is bound to give all the favorable evidence
   the most generous credence and to disregard all the evidence contrary
   thereto.

Appeal from Harper district court; GEORGE L. HAY, judge.
Opinion filed February 7, 1920. Reversed.

*E. C. Wilcox* and *Myrtle Youngberg*, both of Anthony, for
the appellant.

*T. A. Noftzger, George W. Cox, W. R. Glass*, all of Wichita,
and *Vernon Day*, of Anthony, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to cancel a deed and to
quiet the title to property conveyed by a mother to her son.

Some years ago, Jane Graham, an elderly woman, found it
necessary to secure a decree permitting her to live apart from
her husband and allowing her a division of their property.
The real estate in controversy here was separately decree to
her. Through fear that her husband might undertake to sell
this particular property, she conveyed it to her son. One of
her purposes at the time was to place it beyond her husband's
reach, but she also, at that time, assumed that she might die
before her husband, and she apparently intended that her son
should hold the title for her use during her lifetime and at
her death divide the property (in some suitable way) in three
parts, between his sister, his brother, and himself.

Later the old lady's husband died, and she commenced this
action against her son, charging misrepresentation and fraud
on the part of her son in the procurement of the deed from
her, and also—

"That she executed a deed to him without consideration, believing the facts related by the son to be true; and that it was understood that while the deed was actually executed, that the equitable title should remain in the plaintiff; that she had remained in possession ever since; that it was not the intention of the parties that she should part with the title, but that she should retain the equitable title and place only the legal title in the defendant, R. H. Graham, jr., for the purpose aforesaid; that her husband had since died, and on request the defendant, R. H. Graham, jr., had refused to reconvey."

The son's answer denied the fraud alleged; alleged that his mother was concerned as to whether her husband would inherit the property if she died first; and that she informed him—

"That it was her desire that her real estate should be divided between her children, R. H. Graham, Jr., John Graham, and Mima Reddy, and she requested defendant to accept a deed for said property for their benefit, and it was then orally agreed between plaintiff and R. H. Graham, jr., with consent of John and Mima (brother and sister) that the defendant would receive a deed to said property; that plaintiff would receive, after deducting expenses, the rents and profits, during her natural life and in case of sale, during her lifetime, after actual expenses advanced by defendant if any, he should divide the remainder equally between himself and brother and sister. And in case of death and the property not sold, a like division be made. That pursuant to said agreement he accepted the deed and recorded it . . . That he has caused all rental to be paid to the plaintiff, and has carried out in good faith his part of the contract and intends so to do. That pursuant to the contract he had paid out on the property, taxes $369.76, plaintiff's doctor bill $310.56, making a total of $680.48, which had not been refunded."

While the issues were thus joined, and after the old lady had given her deposition, she died testate, leaving her daughter as residuary legatee and devisee of the property in dispute. The cause was revived, and an amended petition was filed, which merely elaborated the original petition.

At the trial, extended statements of counsel for plaintiff and defendant were made and recorded, and considerable evidence, including the dead mother's deposition, was introduced.

Defendant's demurrer to plaintiff's evidence was sustained; and plaintiff appeals.

We are inclined to acquiesce in defendant's contention that there was no evidence showing that in accepting the deed the son had practiced any fraud upon his mother. His acceptance

of the deed seems to have been made in good faith. He believed, his mother believed, his brother and sister believed, that the father might give the mother some trouble about the property and would get part of it if he survived her. The conveyance was chiefly made in an endeavor to frustrate that possibility. And so the trial court was correct in its ruling on the issue of fraud.

But the pleadings and the evidence disclosed that the deed was a sort of trust, the chief purpose of which was accomplished when the father died before the mother. The retention of the title thereafter served no urgent purpose of the mother. Perhaps it is true that when the mother conveyed the title to the property to her son she intended for him to divide it in three parts after her death. But surely she might change her purpose; it was still her property. Moreover, there was evidence—lots of it, if the trial court gave it full credence, as it was bound to do as against a demurrer—that the son promised to deed the property back to his mother, that his mother so understood her rights and begged him to reconvey, and that he, equivocally at least, promised to do so. We see no necessity of elaborating on this feature of the case. While no error is discerned in the trial court's ruling so far as the issue of fraud is concerned, the existence of the trust, which is not denied, although its conditions and terms may be disputed, could not be solved by the interposition of a demurrer to the evidence. If the purposes of the trust have been fulfilled, or if the creator of the trust had a right to terminate or alter it, or to revoke the grant, then a judgment for a reconveyance or to quiet the title against the trustee would be proper. However that may be, judgment in this case should be rendered on the evidence; not on a demurrer thereto. (*The State, ex rel., v. Gerhards,* 99 Kan. 462, 464, and citations, 162 Pac. 1149; *Mentze v. Rice,* 102 Kan. 855, and citations, 172 Pac. 516; *Dudas v. Railway Co.,* 105 Kan. 451, and citations, 185 Pac. 28.)

Reversed and remanded for further proceedings.